Joseph M. Smith, appellant,

*v.*

The Board of Chosen Freeholders of the County of Essex, respondent.

It appeared by the bill that respondent, a public corporation, had made deposits of public money belonging to it in a bank; that such deposits were made in the name of the county collector as such, but, by respondent's directions, were withdrawn only by checks signed by the county collector for the time being, and countersigned by the auditor of the county; that a balance of deposits stood on the books of the bank, in the name of Joseph S. Smith, collector; but that Smith had ceased to be collector and had been succeeded by Regan. Upon demurrer to the bill—*Held*, that Smith had no control over or interest in such balance, but that respondent had an action at law to recover the same, if the bank refused to pay a check therefor signed by Regan as collector and countersigned by the then auditor, which action would afford a complete and adequate remedy to it.

On appeal from an order advised by Vice-Chancellor Van Fleet, whose opinion is reported in *Board of Chosen Freeholders &c. v. Newark City National Bank et al., 3 Dick. Ch. Rep. 51.*

*Mr. John W. Taylor*, for the appellant.

*Mr. Frederic W. Stevens*, for the respondent.

Brief of respondent.

The bill in this case is filed to compel the Newark City National Bank to pay to the appellant, the complainant below,

$18,804.91, with interest from July 26th, 1890, the time of its refusal to honor the check drawn by complainant's officers. The case coming up on demurrer, all the facts of the bill stand admitted. It is consequently undeniable that all the money sued for belongs to the complainant; that it was deposited not to the individual account of the defendant Smith, but to his account as collector; that he went out of office on May 24th, 1890; that he was lawfully succeeded by Thomas J. Regan, who thereafter acted as collector; that Smith, the outgoing collector, was requested to make a check for the balance then due the complainant for the purpose of transferring the same to it; that he refused so to do, or to do, or join in doing, any act whatever which would effectuate such transfer, or enable the complainant to draw upon the deposit for the purpose of making lawful and proper payments; and that on July 26th, 1890, a demand for the money was, in due form, made on the defendant bank, which demand the bank refused to comply with, solely on the ground that the check presented, which was signed by the then collector and auditor, was not signed by Smith.

The question presented is this: Can the bank retain and use the county moneys indefinitely—moneys which it admits are county moneys—simply because the outgoing official stubbornly and maliciously refuses to make a formal transfer of the fund?

No meritorious defence is attempted to be set up. The bank pleaded what on its face appears to be a dilatory plea, and Smith demurred solely on the technical ground that the complainant might have had relief against him and the bank, either by a common law action, or if not by that, then by *mandamus*. This contention, coming from one who, on the face of the pleadings, admits himself to be a mere wrong-doer, and who has already, by his misconduct, deprived the county for more than a year of a very large sum of money raised by taxation and needed for public purposes, does not merit particular favor. In point of fact it is, as a legal defence, utterly without foundation.

Even if the complainant might have relief in a common law proceeding, it would not follow that it might not also have relief

in an equitable one.  But in point of fact the equitable remedy is the only one which will afford adequate and complete relief.

I will show (1) that the complainant cannot recover the money in an ordinary common law action ; (2) that it cannot recover through the extraordinary remedy of *mandamus ;* (3) that the proper remedy is in equity.

1. The board of chosen freeholders cannot recover the money by suit at law.

The money is in the hands of the bank, not in Smith's hands. It was placed there with the knowledge and consent of the board of freeholders.  It was not subject to Smith's exclusive control, even while he was collector.  It could only be drawn out by check signed by him and the auditor jointly.  Consequently, no action for money had and received would lie against Smith.

As to the bank, it would seem, at first blush, that on its refusal to pay the board might sue as principal, on the theory that the money belonged to it (*Rev. p. 127* § *2, p. 128* § *4*), and that the collector, in whose name it was deposited, was only its agent. But the cases at common law are to the contrary.  They hold that "sums paid to the credit of a customer with a banker, though usually called deposits, are in truth loans by the customer, to the banker ;" that the customer, who seeks to recover the balance of such an account, must prove that the loans were made by him ; that the contract is only between the customer and the bank, though the money be in fact the money of the principal ; that there is no privity between the bank and the principal, and that the bank is " in all such cases responsible and indebted to the customer alone."  *Sims* v. *Brittain, 4 Barn. & Ad. 375 ; Sims* v. *Bond, 5 Barn. & Ad. 389 ; Tassell* v. *Cooper, 9 Man., G. & S. 509.*

And this is the case, even though the depositor have two accounts—one an individual account, and the other an account expressed to be an account as agent.  *Sims* v. *Brittain, supra.*

In Pennsylvania, owing, no doubt, to its peculiar practice of blending legal and equitable remedies, the principal has been allowed to recover, but it is elsewhere held that the action is equitable, not legal.

Thus, in *Van Alen* v. *American National Bank, 52 N. Y. 10*, V. and R. had deposited plaintiff's money in their individual account. They gave a check to plaintiff for the amount, which check the bank refused to pay. Said Church, C. J.: "If V. and R. had refused to give a check, the plaintiff might have been obliged to resort to an equitable action."

And in *National Bank* v. *Insurance Co., 104 U. S. 66*, Matthews, J., in the course of an exhaustive discussion of the entire subject, says: "It is objected that the remedy of the complainant below, if any existed, is at law and not in equity. But the contract created by the dealings in a bank account is between the depositor and bank alone, without reference to the beneficial ownership of the moneys deposited. No one can sue at law for a breach of that contract, except the parties to it. There was no privity created by it." In this case the customer's account was entitled "A. H. D., Jr., Gen'l Ag't."

2. Neither is *mandamus* the proper remedy, and this for the following reasons:

In the first place, the writ would not effectually redress the wrong. The wrong consists principally in the unlawful detention by the bank of money belonging to the complainant. But *mandamus* would not go against the bank, although it is the chief offender, for it owes no legal duty to the complainant. It owes no duty imposed by express law, and it owes no duty imposed by contract. The legal, as distinguished from the equitable, view of the matter is, that the bank is debtor to Smith alone. And even if there was a duty arising out of contract which the law recognized, this would not authorize a *mandamus* against the bank. Says Mr. Justice Depue, in *State* v. *Paterson and Newark R. R., 14 Vr. 512:* "Duties imposed on a corporation, not by virtue of express law or by the conditions of its charter, but arising out of contract relations, will not be enforced by *mandamus*." The writ, then, would go against Smith alone. But Smith is not the custodian of the money; with the concurrence of the board of freeholders, he deposited it with the bank, and, while the bank continues solvent, he personally could not be held. So, then, all the court could do would be to order

Smith to sign a check directing the bank to pay the money to complainant. In other words, to order a stranger, over whom the court neither had, nor could acquire, control, to pay a sum of money. It is not certain that the court would make such an order. In *Regina* v. *Mayor of Derby, 2 Salk. \*436*, it is said that " it is absurd that the writ should be directed to one person to command another." But, conceding that it could, it is evident that the very foundation upon which the court grants this species of relief, viz., that it is the only adequate and effectual remedy, fails—it is neither adequate nor effectual ; it could not be made so, for the court could never, either in this or in any other form of action or proceeding at law, compel the bank to make restitution. If the bank should, for some reason, no more frivolous than that which it now gives for not turning over the money, refuse to honor the check, the complainant would be remediless in the law courts.

In the second place, *mandamus* would not answer, for the reason that it is not the appropriate remedy for the collection of a debt. Suppose, for argument's sake, that the court could acquire jurisdiction by *mandamus* over the bank, and that the complainant could stand in Smith's place, then its claim would be merely a claim for money lent. Nothing is better settled than that such a claim must be enforced in an ordinary common law action. *The State, ex rel. Little,* v. *Township of Union, 8 Vr. 84 ; The State, Galbraith, pros.,* v. *People's Association, 14 Vr. 389.*

If it should be said that a legal obligation to pay the money rested on Smith—a very doubtful proposition—and that *mandamus* might go against him, is it not evident that if he was legally liable at all, he, too, would be liable in a common law action ?

I have failed to find a single case in which it has been held that *mandamus* was the proper form of proceeding to be used against a retiring officer who had, by reason of his defalcation or otherwise, failed to pay over to his successor public moneys remaining in his hands undisbursed. The universal practice in such cases is to proceed by an ordinary common law action. The cases cited by counsel in the court below are entirely irrele-

vant. Thus, *State* v. *Goll, 3 Vr. 285,* was a case in which a retiring secretary was required to deliver to the corporation certain corporate books. That was a case in which *mandamus* was the only effective means of redress. The other two cases cited (*State* v. *Sheridan, 13 Vr. 64,* and *State* v. *Rahway, 15 Vr. 587*) were common instances of controversies between two public officers actually engaged in the discharge of their official duties, as to which of them was entitled to a particular fund. These cases have nothing to do with the present inquiry.

But even if a writ of *mandamus* might be resorted to, it would by no means follow that the court of chancery might not have concurrent jurisdiction. Instances of such concurrent jurisdiction are numerous. Indeed, the rule is, that if a court of chancery has already acquired jurisdiction of the same subject-matter, which is presented in the application for a *mandamus,* and has full power to grant relief, that is a complete bar to the exercise of the jurisdiction by *mandamus.* *High Extr. Rem.* § *21 (2d ed.)*

So, the case comes down to this: Does the bill show a case of equitable cognizance? That it does, is established by a line of most conclusive authorities. *Pennel* v. *Deffel, 4 DeG., M. & G. 372; Ex parte Kingston, L. R. (6 Ch. App.) 632; Knatchbull* v. *Hallett, 13 Ch. Div. 696; Van Alen* v. *American National Bank, 52 N. Y. 1; Central National Bank* v. *Connecticut Insurance Co., 104 U. S. 54; Union Stock Yards Bank* v. *Gillespie, 137 U. S. 411.*

In view of these cases, I might almost preface my remarks on this head with what was said by James, L. J., in *Ex parte Kingston:* "This case has been argued with a courage, a pertinacity and a learning which it has been melancholy in my judgment to see thrown away upon a case so utterly hopeless," and yet this case had a much more plausible look than the case in hand. There, there was some reason for withholding the money by reason of the counter demand; here, there is none.

The case was this: G., a county treasurer, had two accounts in the same bank, one his private account, the other an account headed "police account." G. was known to the bank to be

county treasurer.  He absconded—his private account being
overdrawn, his police account in credit; the bank attempted to
set off the one account against the other.  It was held in a suit
in equity, instituted by the county magistrates, that they were
entitled to recover the amount of the balance standing to G.'s
credit at the time he absconded.  This case is directly in point,
and illustrates in a very striking way how differently law and
equity view the same transactions.  In the case of *Sims* v. *Brit-
tain, supra,* a case at law, Gribble had two accounts, one his
private account and the other an account as " managing owner,"
known by the bank to contain moneys which he received as
agent, and yet Baron Parke, in a suit by the principals, said :
" The entry of the sum to Gribble's credit on a separate account
is only a mode of keeping the account between Gribble and the
defendant (the bankers), for the sake of convenience ;" a plan
which is adopted between a customer and his banker, the latter
being, nevertheless, in all such cases responsible and indebted to
the customer alone.  While in the case *Ex parte Kingston* in
equity, Lord Justice James said :  " He (the county treasurer)
opened a distinct account and headed it ' police account,' which
heading, to my mind, was as clear and distinct a statement that
the moneys paid into it were the moneys belonging to the county,
as if he had put the county moneys into a strong box, labeled
' county moneys,' and when he failed the moneys standing to
that account were, in my opinion, as much county moneys as if
they had been kept in such a box as I have suggested."

In the *Central National Bank* v. *Insurance Co., supra,* one
Dillon kept an account in the defendant bank, as general agent ;
the moneys paid into this account consisted principally of insur-
ance premiums belonging to the complainant; on Dillon's failure,
the bank attempted to offset the amount due them from Dillon
personally against the balance of his account as general agent.
The decision was that the bank was responsible in equity to the
insurance company for this balance.  In the course of the opin-
ion, Matthews, J., says : "Although the relation between the
bank and its depositor is that merely of debtor and creditor, and
the balance due on the account is only a debt, yet the question is

already open, to whom in equity does it beneficially belong? If the money deposited belong to a third person, and was held by the depositee in a fiduciary capacity, its character is not changed by being placed to his credit in his bank account."

After reviewing many of the cases he proceeds: "The same doctrine was strongly maintained by the New York court of appeals in *Van Alen* v. *American National Bank.* In that case it was decided that when an agent deposits in a bank, to his own account the proceeds of property sold by him for his principal, under instructions thus to keep it, a trust is impressed upon the deposit in favor of the principal, and his right thereto is not affected by the fact that the agent at the same time deposits other money belonging to himself; nor is it effected by the fact that the agent, instead of depositing the identical moneys received by him on account of his principal, substitutes other money therefor." In the course of the opinion, Church, C. J., said: "It was suggested on the argument that notice to the bank by the depositor was necessary to protect the rights of the plaintiff, but this is not so. The title of the plaintiff does not depend upon whether it knew he had a title or not. That rested upon other facts. A notice to the bank might have prevented any transfer, or the creation of a lien by the depositor, or prevented the bank from taking or acquiring such lien in good faith, but could not otherwise be necessary or important. This doctrine of equity is modern only in the sense of its being a consistent and logical extension of a principal originating in the very idea of trusts, for they can only be preserved by a strict enforcement of the rule that forbids one holding a trust relation from making private use of trust property. The relation of Dillon to the insurance company was one of trust and confidence. He was its agent for the collection of premiums, which belonged to it no less when in his hands than before their receipt by him. He was to account for them, under its directions, and in his entire dealings with them was bound to obey its orders. He was not merely its debter for the amount in his hands; he held the fund for the use and as the property of the company."

So, in the case in hand, the moneys were the property of the complainant. The statute expressly says so. *Rev. p. 127* §§ *2, 4.* The bank knew this. The account itself showed it. The bank submitted to the regulations of the complainant as to the mode of drawing their moneys out. Being in equity alone regarded as the complainant's property, equity alone can give the remedy for its recovery. That it has the power to do so, and that it has repeatedly done so, is demonstrated by the cases I have cited. This remedy is adequate. It restores to the complainant the very fund affected by the trust. It is far more complete than *mandamus*, even if *mandamus* would go as against Smith, for it decides the whole question as between all the parties interested, instead of affording only a partial remedy against one of the parties, and he not the principal offender.

The opinion of the court was delivered by

MAGIE, J.

This appeal is from an order overruling a demurrer to respondent's bill of complaint.

One cause of demurrer assigned by appellant was that, upon the facts alleged in the bill, respondent had a complete and adequate remedy at law.

The bill was filed by the board of chosen freeholders of Essex county, the respondent, against appellant and the Newark City National Bank. By its statements the following facts appear and are admitted by the demurrer:

The Newark City National Bank was a bank of discount and deposit. Respondent had kept an account in the bank and deposited therein part of the county money for the purpose of drawing against the same by check. The deposits were made in the name of the county collector as such, and were drawn, under direction of respondent, only by checks signed by the county collector for the time being and countersigned by the auditor of the county.

Appellant had been county collector for some years and up to May 24th, 1890, when Thomas J. Regan, previously elected,

gave the security required by law and became county collector in place of appellant. On July 26th, 1890, there stood to respondent's credit on the books of the bank, in the name of "Joseph. M. Smith, Collector," $18,804.91, and on that day, pursuant to respondent's directions, a check for that sum was drawn on the bank, signed by Regan, the collector, and countersigned by the auditor and duly presented for payment. The bank refused payment on the ground that the check was not signed by appellant.

The prayer of the bill was for a decree that the bank should transfer and pay to respondent the sum above named, with interest from the day of the refusal to pay the check.

The determination below was put upon the ground that the facts stated in the bill showed appellant to have been the depositor of the funds in question and the creditor of the bank in respect to the balance on deposit, and respondent to have a merely equitable interest therein capable of being asserted only in an equitable proceeding.

The argument here takes the same view of the facts, and contends that, if appellant was the depositor of these funds, no action at law would lie for the balance by respondent, although, upon the facts, the bank must have known that the deposits were of public money, belonging to respondent, and were deposited for it.

I deem it unnecessary to follow this line of argument, for I find myself obliged to conclude that upon the facts stated in the bill, no relation of debtor and creditor was established between appellant and the bank.

It is expressly stated that the deposits, out of which the fund in question came, were made, not by appellant, but by the board of chosen freeholders, the respondent. By such a deposit the bank became the debtor of the respondent, and the inference that such was the relation between the two corporations is not at all modified by the fact that the bank chose to place the deposits to the credit of the county collector as such, for upon the statements of the bill it may be inferred that such conduct was part of the contract of deposit. Moreover, the directions given by

respondent as to the mode in which drafts on the bank for such deposits should be drawn, clearly indicates that the moneys deposited were *not to* be controlled or drawn by the county collector, in whose name, *as such,* they might be entered. For the directions of respondent were that deposits were to be withdrawn only by checks of the collector for the time being, countersigned by the auditor, and the collector, for the time being, might not be the collector whose name stood at the head of the account, but a successor in office, as in the case before us. Such directions must be presumed, from the statements, to have been acquiesced in by the bank, and also to have made part of the contract of deposit.

Under these statements, I conceive it impossible to discover any contract between the bank and appellant. The latter could not withdraw the deposit, nor give orders upon it, without the intervention of another and independent county official, and when he ceased to be collector, as he admits he has by the demurrer, he lost the power to sign checks. Under such circumstances, he could have brought no action at law or otherwise for the balance in question.

On the contrary, upon proof before a jury in a court of law of the facts stated in the bill, in an action by respondent against the bank, I think it would have been the duty of the court to direct a verdict in favor of respondent. Such an action would have been an appropriate and complete remedy for respondent.

I have reached this conclusion with great reluctance. Upon the admitted facts, the moneys of the public are withheld from the municipal corporation charged with its control, by a private corporation, without any apparent excuse. Whether it may justify its course or not might be decided in this case, and with no more injury to appellant than his liability to costs. But the line of division between legal and equitable remedies is fixed in this state by a long course of precedents, and even legislative authority is forbidden to intermingle these remedies by the constitutional prohibition against interference with the ancient jurisdiction of the courts. When such an objection as we have been

considering is advanced and established, we are bound to give effect to it.

The result is that respondent, on its own statements, has an adequate and complete remedy at law, and may not, therefore, maintain this bill against appellant.

I shall vote to reverse the decree below, and for a decree dismissing the bill as against appellant.

*For reversal*—THE CHIEF-JUSTICE, DIXON, MAGIE, REED, SCUDDER, VAN SYCKEL, BROWN, CLEMENT, WHITAKER—9.

*For affirmance*—DEPUE, KNAPP, SMITH—3.